IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

I'ESHA SHELTON SHORT, spouse of
Timothy Short, deceased,

        Plaintiff,

    v.

ST. CHARLES COUNTY, MISSOURI,

    and

ACCOUNTABLE HEALTH STAFFING, INC.,

    and

MEGAN JOHANSSON,

NICOLE COOK,

JANDI COX, and

JAMI HOHL,

        Defendants,

Case No.  4:22-cv-01117-SEP

JURY TRIAL DEMANDED

## SECOND AMENDED COMPLAINT

COMES NOW I'Esha Shelton Short, by and through her undersigned attorneys of record, for her complaint against defendants, and states to the Court as follows:

1.    Timothy Short died on October 18, 2021.

2.    Mr. Short, pictured below, was a loving father, foster father, and grandfather. He was a beloved football coach, and at his funeral, many of his former players attended as a show of their respect and loyalty to him.



3.    In September 2021, Mr. Short was held in the custody and care of defendants after being pulled over outside of his home.

4.    Before being taken into custody, Mr. Short had contracted COVID-19. Mr. Short also had longstanding serious heart and blood pressure conditions, for which he had had a stent implanted and took prescription medication.

5.    Even though Mr. Short, and his wife, Plaintiff I'Esha Shelton Short, requested Defendants give Mr. Short his medication and provide him medical attention while in their custody and care, defendants delayed or denied doing so, in deliberate indifference to Mr. Short's serious medical needs.

6.    Ultimately, because defendants delayed, denied, or withheld Mr. Short medical attention, Mr. Short died.

7.    Mr. Short was thus denied, under color of state law, the rights, privileges, and immunities secured to him by provisions of the Eighth and Fourteenth Amendments of the United States Constitution.

8.     Ms. Short brings this action to hold defendants liable for their conduct pursuant to Mo. Rev. Stat. § 537.080.

## PARTIES

9.     Plaintiff I'Esha Shelton Short is the wife of Timothy Short. Ms. Short is, and was during all relevant times, a resident of the State of Missouri. She brings this action pursuant to the Missouri Wrongful Death Statute, Mo. Rev. Stat. § 537.080.

10.     On or about October 3, 2022, Ms. Short filed her Application for Letters of Administration in *Matter of Timothy Scott Short*, No. 2211-PR01159 (Cir. Ct. St. Charles Cnty.).

11.     Defendant St. Charles County, Missouri ("Defendant County") is a political and geographic subdivision of the State of Missouri existing pursuant to Missouri law and responsible for the operations of the St. Charles County Sheriff's Department and the St. Charles Department of Corrections.

a.     Defendant County is and was responsible for funding the St. Charles County Jail, also known as the St. Charles County Department of Corrections facility, including medical care at the jail.

b.     At all relevant times herein, Defendant County contract with Defendant Accountable Healthcare Staffing, Inc. to provide medical services and staffing at the St. Charles County Jail.

c.     At all relevant times, Defendant County secured and had insurance coverage applicable to the tort claims asserted herein which did not preserve sovereign immunity.

12. Defendant County employee Jami Hohl, RN is and was at all relevant times hereinafter mentioned, an employee of Defendant County through its St. Charles County Department of Corrections as a healthcare provider, holding a Missouri license as a registered nurse, engaging in the practice of nursing, with duties of performing pretrial detainee intakes upon their arrival at the St. Charles County Jail.

   a. Defendant Hohl, at all relevant times, had received training and possessed knowledge of Defendant County's policies and procedures.

   b. Defendant Hohl's failure to follow his training of the policies violated Timothy Short's Constitutional Rights and resulted in a deliberate indifference to his serious medical condition.

   c. Defendant Hohl's conduct in this case was under the color of law.

   d. Defendant Hohl is sued in his individual and official capacity.

   e. Defendant Hohl is believed to be a resident of St. Charles County, Missouri.

   f. At all relevant times, Defendant Hohl was charged with, and obligated to, assess, nursing diagnose, plan, intervene, medicate, communicate with physicians, and evaluate Timothy Short's medical needs at the St. Charles County Jail.

   g. Defendant Hohl breached his duty of care, acted with negligence, and the direct and proximate result of the negligence was the death of Timothy Short.

13. Defendant County employee Jandi Cox, RN is and was at all relevant times hereinafter mentioned, an employee of Defendant County through its St. Charles County Department of Corrections as a healthcare provider, holding a Missouri license as a registered nurse, engaging in the practice of nursing.

a. Defendant Cox, at all relevant times, had received training and possessed knowledge of Defendant County's policies and procedures.

b. Defendant Cox's failure to follow her training of the policies violated Timothy Short's Constitutional Rights and resulted in a deliberate indifference to his serious medical condition.

c. Defendant Cox's conduct in this case was under the color of law.

d. Defendant Cox is sued in her individual and official capacity.

e. Defendant Cox is believed to be a resident of St. Louis County, Missouri.

f. At all relevant times, Defendant Cox was charged with, and obligated to, assess, nursing diagnose, plan, intervene, medicate, communicate with physicians, and evaluate Timothy Short's medical needs at the St. Charles County Jail.

g. Defendant Cox breached her duty of care, acted with negligence, and the direct and proximate result of the negligence was the death of Timothy Short.

14. Defendant Accountable Healthcare Staffing, Inc. (hereinafter, "Defendant AHS") is a private for-profit corporation operating in the state of Missouri, organized under the laws of the state of Delaware, with its principal place of business located at 999 W. Yamato Road, Ste. 210, Boca Raton, Florida 33431-4478, that has a contractual obligation to provide medical care to inmates and pretrial detainees in the Saint Charles County Jail. At all times relevant hereto Defendant AHS provided medical personnel, including but not limited to physicians, registered nurses, licensed practical nurses, and other employees to work at the Saint Charles County Jail.

5

a. At all times relevant here too, Defendant AHS acted through its servants, employees and agents and Defendant AHS is vicariously liable for the negligent acts and/or failures or omissions of each of its employees.

b. At all times relevant here too, Defendant AHS acted through its servants, employees, and agents and provided health care services in Saint Charles County, Missouri.

c. Defendant AHS is not a licensed medical or healthcare provider in the state of Missouri but at all times relevant hereto was providing health care services in Saint Charles County, Missouri.

d. Defendants Johansson and Cook were regularly employed and at all times herein mentioned, agents, servants, and/or employees of Defendant AHS, or because of the doctrine of "apparent authority" or "ostensible agency" were employees of Defendant AHS, and we're acting within the course and scope of their employment with Defendant AHS, thereby rendering Defendant AHS liable for their acts of negligence as agents, servants, and/or employees, or as agents under the doctrine of respondeat superior, ostensible agency, and/or apparent authority.

15. Defendant Megan Johansson, LPN (hereinafter "Defendant Johansson"), an employee or agent of Defendant AHS, was at all relevant times hereinafter mentioned, a healthcare provider, a Missouri licensed practical nurse, engaging in the practice of nursing.

a. At all relevant times herein mentioned Defendant Johansson provided care and treatment to Timothy Short as hereinafter described at the St. Charles County Jail.

6

b. At all relevant times herein mentioned, Defendant Johansson, was charged with, and obligated to, assess, nursing diagnose, plan, intervene, medicate, communicate with physicians, and evaluate Timothy Short's medical needs at the St. Charles County Jail.

c. Defendant Johansson breached her duty of care, acted with negligence and the direct and proximate result of the negligence was the death of Timothy Short.

16. Defendant Nicole Cook (hereinafter "Defendant Cook"), an employee or agent of Defendant VitalCore, was at all relevant times hereinafter mentioned, a healthcare provider, a Missouri nurse, engaging in the practice of nursing.

a. At all relevant times herein mentioned Defendant Cook provided care and treatment to Timothy Short as hereinafter described at the St. Charles County Jail.

b. At all relevant times herein mentioned, Defendant Cook, was charged with, and obligated to, assess, nursing diagnose, plan, intervene, medicate, communicate with physicians, and evaluate Timothy Short's medical needs at the St. Charles County Jail.

c. Defendant Cook breached her duty of care, acted with negligence and the direct and proximate result of the negligence was the death of Timothy Short.

17. County Defendant and its employees, Defendants Cox and Hohl, have waived sovereign immunity through the purchase of insurance that exists to cover liability for the claims asserted herein.

18. Defendants AHS, Johansson, and Cook have purchased insurance that exists to cover liability for the claims asserted herein.

## JURISDICTION AND VENUE

19.    The Court has subject matter jurisdiction over this controversy under Article III of the United States Constitution and 28 U.S.C. §§ 1331 and 1343 because the claims brought herein arise under the laws of the United States and thus present federal questions and because Ms. Short brings this action to redress the deprivation, under color of law, the rights, privileges, or immunities secured to Mr. Short by the United States Constitution.

20.    The Court has supplemental jurisdiction under 28 U.S.C. § 1367 as the state law tort claims are so related to the constitutional claims asserted herein that they form part of the same case or controversy under Article III of the United States Constitution.

21.    The Court has personal jurisdiction over defendants as the acts and omission giving rise to this case occurred in St. Charles County, Missouri.

22.    Venue in this district is proper pursuant to 28 U.S.C. §§ 105(b) and 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in St. Charles County, Missouri, which lies within the Eastern District of Missouri.

## GENERAL ALLEGATIONS

23.    On April 15, 2020, the St. Charles County Department of Corrections implemented its Pandemic Emergency Response Plan – Medical related to the COVID-19 outbreak (hereinafter "Defendant County's Pandemic Jail Plan").

24.    The Defendant County's Pandemic Jail Plain provided a series of policies and procedures for the operation of the St. Charles County Jail related to a variety of potential pandemics, including COVID-19. Among these was the requirement that the St. Charles

County Jail not intake new detainees if a particular strain had reached 20 current infections inside St. Charles County:

> 13. Once it has been determined by PHD that a strain has reached epidemic proportions within the St. Charles region, SCCDOC will shut its doors to all new admissions. The exception to this will be those individuals arrested for violent crimes, and those individuals who have had a documented screening before arriving to the SCCDOC and have been determined uninfected or the prevailing strain. An epidemic is said to have "taken off" when it reaches 20 current infectious cases, after which its growth is highly unpredictable and the probability of fade-out by chance is very low.

25.     The COVID-19 infection rate in St. Charles County, Missouri had been at more than 20 current cases continually since March 2020.

26.     During the week of September 9, 2021, St. Charles County had almost 1,000 active infections and between 1,000 and 1,500 new tests each day, of which between 10% and 15% were positive for COVID-19.

27.     Based on Defendant County's policy to not take non-violent detainees into custody unless they had a recent, negative COVID test, Defendant County, Defendant AHS, and each of their agents did not have the staffing or resources available to provide adequate monitoring and care to a COVID-positive detainee like Timothy Short was in September, 2021.

28.     Prior to his arrest on September 9, 2021, Mr. Short had a longstanding serious heart and blood pressure conditions, for which he had had a stent implanted and took prescription medications, including the Metoprolol Tartrate, Clopidogrel Bisulfate, Rosuvastatin, and Lisinopril.

29.     In September 2021, Mr. Short's family members were either diagnosed with COVID-19 or experiencing COVID-19-like symptoms.

30.     On or about September 8, 2021, Mr. Short himself received a positive COVID-19 diagnosis.

31.     On or about September 9, 2021, Mr. Short's son was experiencing some COVID-19 symptoms but had not yet been diagnosed. So, Mr. Short set out in his vehicle with his son to take him to get a COVID-19 test.

32.     Amanda Hopkins of the St. Charles County Police Department was on patrol at that time near the Short's house. She observed Mr. Short and pulled her vehicle close to his. Mr. Short turned around in a service station near his house and made a U-turn back into his driveway. At this point, Officer Hopkins pulled her vehicle behind Mr. Short's.

33.     Officer Hopkins said that when she ran Mr. Short's license, a warrant out of Kansas City had come up for his arrest. Mr. Short had active warrants for identity theft and misdemeanor failure to appear. Neither offences are violent crimes.

34.     Mr. Short informed Officer Hopkins that he and his family members had active cases of COVID-19.

35.     Seeing her husband, son, and Officer Hopkins in their driveway, Ms. Short came outside. She also informed Officer Hopkins that the Short family was suffering from COVID-19.

36.     Meanwhile two other officers, also of the St. Charles County Police Department, arrived at the Short family's home.

37.     Officer Hopkins asked Mr. Short if he had proof of a positive COVID-19 test, but Mr. Short could not locate it upon demand.

38.     The other officers handcuffed Mr. Short.

39.    Ms. Short asked the officers if she could bring Mr. Short his morning medications because he had not taken them yet. They answered affirmatively, and Ms. Short went inside and brought out Mr. Short one dose of his morning medications, which she gave to Mr. Short.

40.    This was the last time any of Mr. Short's children saw him alive in person.

41.    Then Officer Hopkins transported Mr. Short to St. Charles Department of Corrections' facility on North Second Street for booking.

42.    When Defendants took Mr. Short into custody, they became responsible for Mr. Short's custody and care.

43.    Defendants were responsible for administering and supervising Mr. Short's medical care while Mr. Short was in Defendants' custody.

44.    On September 9, 2021, Mr. Short was placed into a negative-pressure, single-occupant cell in the intake area of the jail. Plaintiff understands that this decision was ostensibly due to Mr. Short's active case of COVID-19. Mr. Short reported being left in solitary confinement lying on the floor of a cell with just a blanket. Mr. Short was in this cell continuously until he was taken to the hospital on September 14, 2021.

45.    The negative pressure cell is along the main hallway in the intake area of the St. Charles County jail. There are open windows into that cell. The cell is monitored 24/7 by a video camera that covers 100% of the floorspace in the cell. All corrections and medical staff walking through the intake area could have seen into Mr. Short's cell without obstruction, had they turned their head in that direction.

46.    On September 9, 2021, County employee Michael Davis performed an intake, or fit-for-confinement assessment on Mr. Short. In violation of Defendant County's pandemic

11

policy, the form was marked that Mr. Short was healthy enough for confinement in the St. Charles County Jail.

47. County employee Davis recorded that Mr. Short had prescriptions for four medications: Metoprolol Tartrate, Clopidogrel Bisulfate, Rosuvastatin, and Lisinopril. Each of these medications, other than Clopidgrel, was recorded as "inactive." As a result of this indication, the other medications were withheld from Mr. Short until at least September 12, 2021. County employee Davis recorded the above medications as "inactive" following a policy of the St. Charles County Jail to do so if a prescription had not recently been filled at a pharmacy but without regard to other ways a person might legally obtain medication from his or her healthcare professionals.

48. Defendants withheld Mr. Short's prescribed Rosuvastatin for the entire time he was at the St. Charles County Jail.

49. On September 9, 2021, County employee Davis requested a doctor review of Mr. Short's situation. Due to the insufficient staffing provided by Defendant County and Defendant AHS, no such doctor review occurred prior to Mr. Short's release. Indeed, a physician's review of Mr. Short's presentation and symptoms was withheld by all Defendants throughout his detention in the St. Charles County Jail.

50. On September 10, 2021, Mr. Short was evaluated by Nurse Moses who recorded his pulse oxygen at 94%.

51. On September 10, 2021, Mr. Short was evaluated by Nurse Virgina Parker who noted that Mr. Short had a pulse oxygen of 90%. Nurse Parker provided no care or treatment for this reading. Defendant Parker did nothing to escalate Mr. Short's situation to any other

health care provider, including any of the registered nurses or doctors that may have been assigned to the St. Charles County Jail.

52. On September 11, 2021, Mr. Short was evaluated by Nurse Garrison-Metzger who noted that Mr. Short had a pulse oxygen of 93% and shortness of breath. Unlike Nurse Parker's evaluation the day prior, Nurse Garrison-Metzger did nothing to evaluate how many respirations Mr. Short was taking. Nurse Garrison-Metzger provided no care or treatment for this reading. Nurse Garrison-Metzger did nothing to escalate Mr. Short's situation to any other health care provider, including any of the registered nurses or doctors that may have been assigned to the St. Charles County Jail.

53. On September 12, 2021, Nurse Davis conducted a COVID assessment and noted that Mr. Short had a pulse oxygen of 93% and shortness of breath. Nurse Davis provided no care or treatment for this reading. Nurse Davis did nothing to escalate Mr. Short's situation to any other health care provider, including any of doctors that may have been assigned to the St. Charles County Jail.

54. On September 12, 2021, Mr. Short was evaluated by Nurse Stacy Kent who noted that Mr. Short had a pulse oxygen of 92% and shortness of breath. Unlike Defendant Parker's prior evaluation, Nurse Kent did nothing to evaluate how many respirations Mr. Short was taking. Nurse Kent provided no care or treatment for this reading. Nurse Kent did nothing to escalate Mr. Short's situation to any other health care provider, including any of doctors that may have been assigned to the St. Charles County Jail.

55. While the medical records indicate that Mr. Short's pulse oxygen readings were in the 90s on and before September 12, 2021, Mr. Short's actually had pulse oxygen readings of as low as 74%. Nevertheless, none of the health care providers at the St. Charles

13

County jail provided any care or treatment for this condition, nor did they escalate Mr. Short's situation to any other health care provider, including any of other nurses or doctors that may have been assigned to the St. Charles County Jail.

56.     On September 13, 2021, was evaluated by Defendant Johansson who noted that Mr. Short had a pulse oxygen of 85% and shortness of breath. Unlike Defendant Parker's prior evaluation, Defendant Kent did nothing to evaluate how many respirations Mr. Short was taking. Defendant Kent provided no care or treatment for this reading. Defendant Kent did nothing to escalate Mr. Short's situation to any other health care provider, including any of doctors that may have been assigned to the St. Charles County Jail. During this evaluation, Defendant Johansson noted that Mr. Short "refused to sit tall against the cell wall" and "refuses to take deep breaths." Defendant Johansson further noted that Mr. Short's pulse oxygen varied from 84%-87%, though she recorded in the record as 85%.

57.     Defendant Johansson thought Mr. Short was malingering and failed to respond to his symptoms.

58.     Defendant Johansson never reported Mr. Short's condition to a doctor or her supervisor.

59.     Defendant Johansson began a new administration of oxygen to Mr. Short on September 13, 2021 without receiving a doctor's order or confirmation that her supervisor had received a doctor's order.

60.     Non-emergent administration of oxygen requires a doctor's order and any new oxygen requirement requires

61.     Defendant Johansson never later verified with a doctor that Mr. Short should remain on oxygen.

14

62.     Though she has told a different story, Defendant Johansson gave Mr. Short an oxygen tank that would have lasted 4–8 hours at most. Failure to provide Mr. Short with a sufficient supply of oxygen caused him to go without critical oxygen support.

63.     Defendant Johansson's actions and omissions demonstrate her deliberate indifference to Mr. Short's serious medical needs.

64.     Alternatively, Defendant Johansson reports that she told Defendant Jandi Cox of Mr. Short's condition and that any failure to report Mr. Short's condition or new oxygen requirement was Defendant Cox's responsibility. But according to Defendant Johansson, Defendant Cox refused to call the doctor.

65.     Defendant Cox's failure to report Mr. Short's condition or his new oxygen requirement to a doctor demonstrates her deliberate indifference to Mr. Short's serious medical needs.

66.     The policy of the St. Charles County Jail was for patients, like Mr. Short, who have tested positive for COVID-19 to be evaluated at least twice per day by the medical nursing staff.

67.     Defendant Hohl and Defendant Cook were on-duty during the afternoon and evening of September 13, 2021.

68.     Defendant Cox notified Defendant Hohl of the need to check on Mr. Short given his deteriorating condition on September 13, 2021.

69.     Mr. Short was not seen by any member of the nursing staff for his second required COVID evaluation on September 13, 2021.

70.     Mr. Short did not receive a PM medication administration on September 13, 2021 and was not administered the second dose of his prescribed medications that day.

71.     The St. Charles County Jail had two standard medication passes per day, one in the AM and one in the PM.

72.     Defendant Hohl reports that she asked Defendant Cook to check on Mr. Short and that Defendant Cook did so at approximately 9:30 PM on September 13, 2021.

73.     No notes were entered on September 13, 2021 reporting of a nursing encounter that evening.

74.     Defendant Cook denies evaluating Mr. Short on September 13, 2021 and, instead, says that Defendant Hohl did so.

75.     On September 14, 2021, while Mr. Short was in Defendants' custody, his physical condition had so deteriorated that he collapsed, whereupon Defendants transported him to SSM Health St. Joseph Hospital.

76.     After Mr. Short was transferred to the hospital, Defendant Cox sent an email to Defendant Hohl indicating that Mr. Short said he was not seen during the evening of September 13, 2021 and asked why that was.

77.     After receiving that email midday on September 14, 2021, Defendant Hohl entered a note into the electronic medical record indicating that Defendant Cook had seen Mr. Short, that his pulse oxygen was at 99% on 2L of oxygen and that Mr. Short was intentionally breathing shallowly. Defendant Hohl indicates that Defendant Cook asked her to do so.

78.     Much later in the evening on September 14, 2021, Defendant Hohl sent a note to Defendant Cox explaining that Defendant Cook had actually seen Mr. Short.

79.     Alternatively, Defendant Cook reports that Defendant Hohl is who examined Mr. Short during the evening of September 13, 2021 and she does not know why Defendant Hohl said she did.

80.     Either Defendant Hohl failed to see Mr. Short or Defendant Cook did. Their stories are irreconcilable.

81.     Either Defendant Cook asked for the Defendant Hohl to input the note or she did not. Their stories are irreconcilable.

82.     In either event the failure to check on Mr. Short when he had a new oxygen requirement, and an oxygen tank that would only last so long, denied Mr. Short even nursing care, much less medical care directed by a doctor.

83.     The failure of either Defendant Hohl or Defendant Cook to check on Mr. Short on the evening of September 13, 2021 demonstrates deliberate indifference to his serious medical needs.

84.     Ms. Short called Defendants each day Mr. Short was in custody because Defendants indicated to her that they would transfer his custody and care due to the warrant mentioned by Officer Hopkins. Ms. Short also called to check on the wellbeing of her husband.

85.     On or about September 12, 2021 and while Mr. Short was in Defendants' custody, he called Ms. Short. This was the first time Ms. Short had spoken to Mr. Short, in spite of the fact that she had called Defendants daily to ask for an update on her husband's condition.

86.     During this call, Mr. Short told Ms. Short that he had not had his medications other than Metoprolol. He said he had not been allowed to shower and had diarrhea. He said he was having a hard time breathing. He said he felt like he was going to die.

87.     Following this conversation, Ms. Short called Mr. Short's criminal defense attorney.

88.     Mr. Short's attorney called Defendants and spoke to personnel in the medical department, who told her that the family could drop off the medications at the front desk, as long as the medications were in their original containers, and they would be administered to Mr. Short.

89.     On September 13, one of Mr. Short's sons dropped off his father's medications with Defendants.

90.     On or about the fifth day Mr. Short was in Defendants' custody, his physical condition had so deteriorated that he collapsed, whereupon Defendants transported him to SSM Health St. Joseph Hospital.

91.     Mr. Short was not provided adequate medical treatment for COVID-19 in spite of his deteriorating condition, his longstanding serious medical conditions, and the seriousness of an active COVID-19 diagnosis.

92.     Defendants' conduct was also in spite of Mr. Short's repeated requests for medication and treatment. When he requested his heart medication, Defendants told him because he had not picked up a refill of the medication, they concluded that he did not need it. This despite Mr. Short's explanation that he had received medicine directly from his healthcare provider, which was why he had not yet picked up the medication from the pharmacy.

93.     On or about September 14, 2021, Mr. Short was admitted to the hospital after having a pulse oxygen reading of 79% while on 3-Liters of Oxygen. After the Oxygen was

increased to 4-Liters, Mr. Short's pulse oxygen increased to 86% before he was transported to the hospital.

94.    Defendant Cox decided to send Mr. Short by squad car rather than ambulance. This resulted in significant delay between when Defendant Cox requested the transport and when the corrections staff actually delivered Mr. Short to the hospital. Failure to transport Mr. Short by ambulance denied him care and further demonstrates the deliberate indifference of Defendant Cox. Mr. Short was handcuffed while at the hospital, and there was an officer outside his room.

95.    On or about September 15, 2021, Ms. Short received a FaceTime call from Mr. Short. Ms. Short did not know until this call that Mr. Short had been admitted to the hospital.

96.    Also on this call, Mr. Short said someone from Defendant St. Charles County Sheriff's Department who said that Mr. Short was no longer in Defendants' custody or in Defendants' care and that any charges against him had been dropped. Mr. Short was free to go (presuming he survived).

97.    Ms. Short was quarantined due to her own diagnosis of COVID-19, and so initially she was not initially able to see Mr. Short in the hospital.

19

98.     At one point, Mr. Short was on a FaceTime call with his children, and he inadvertently took a picture of himself, seen below.



99.     By or around September 19, 2021, Ms. Short was allowed to visit Mr. Short. Mr. Short was on a BiPAP machine. Mr. Short and Ms. Short watched Sunday Night Football together. During this visit, Mr. Short fell in and out of sleep. Below is a photo taken by Ms. Short from around this time.



100.    When Ms. Short left the hospital on the evening of September 19, Mr. Short was still conscious. However, shortly thereafter, Ms. Short received a call that Mr. Short had been put on a ventilator. He was then put in a complete induced coma to give his body the best chance to work with the ventilator. Mr. Short was also placed on a feeding tube in part due to drastic weight loss during custody and at the hospital.

101.    The caller informed Ms. Short that prior to being put in a coma, Mr. Short had made a heart sign to indicate he loved her.

102.    Mr. Short never woke from this coma.

103.    On or about September 20 (around less than a week after Mr. Short was admitted to the hospital), a female doctor told Ms. Short that from her point of view, her husband had a ten percent chance of surviving. This doctor told her that Mr. Short was in bad shape when he had been admitted to the hospital.

104.    After lingering in a coma for nearly a month, unable to interact with his family or the doctors, Mr. Short died on October 18, 2021. He was pronounced dead due to acute hypoxemic respiratory failure secondary to COVID-19 pneumonia.

105.    Mr. Short's death was preventable. He would still be alive had he received the medical treatment he and Ms. Short had requested from Defendants.

106.    Due to Defendants' deliberate disregard for or indifference to Mr. Short's serious medical needs and their acts and omissions to withhold, delay, or deny adequate medical treatment, Mr. Short needlessly suffered and ultimately died.

107.    Defendants had no discretion to withhold, delay, or deny Mr. Short his prescribed medications or medical care.

108.   Defendants acted in bad faith or with malice to withhold, delay, or deny Mr. Short his prescribed medications and medical care.

109.   Defendants are responsible for Mr. Short's suffering and death and must be held liable.

COUNT I

PLAINTIFF'S CLAIM FOR WRONGFUL DEATH PURSUANT TO 42 U.S.C. § 1983
DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED

110.   Ms. Short hereby realleges and incorporates by reference the allegations set forth in the recitation of facts above as though the same were restated fully herein.

111.   Throughout his time in the custody and care of Defendants, Mr. Short suffered from a serious medical need, which ultimately caused his death.

112.   Defendants AHS, Johansson, Cox, Hohl, and Cook (hereinafter "Medical Defendants") were made aware of Mr. Short's serious medical need through several avenues, including but not limited to Mr. Short's and Ms. Short's request for medication and medical treatment and Mr. Short's observably deteriorating physical condition.

113.   At all relevant times Medical Defendants acted under color of law.

114.   Medical Defendants' deliberate indifference to Mr. Short's serious medical needs violated Mr. Short's Eighth Amendment right to be free from cruel and unusual punishment, as applied to the states through the Fourteenth Amendment.

115.   Medical Defendants had knowledge of Mr. Short's serious medical needs but deliberately disregarded them.

116.   Medical Defendants intentionally withheld, denied, or delayed Mr. Short access to medication and medical care.

117.    Medical Defendants intentionally interfered with treatment or medication that was prescribed to Mr. Short.

118.    As a result of Medical Defendants' deliberate indifference, Mr. Short suffered serious, and eventually terminal, injuries.

119.    Specifically, the Medical Defendants' breached their duty of care and committed the following acts of negligence and carelessness:

a.    Failures to communicate, supervise, provide necessities, implement appropriate policies and procedures and failure to follow existing policies and procedures;

b.    Failures to assess Timothy Short's current and continuing medical status while detained;

c.    Failures to assess Timothy Short's chronic health conditions and appreciating their risk to his health and life;

d.    Failures to provide professional medical judgment and care that would have been ordered by outside treating physicians;

e.    Failures to note urgent conditions or conditions that necessitate regular assessment, monitoring, and follow-up;

f.    Failures to diagnose changes in Timothy Short's health status;

g.    Failures to plan appropriately in order to meet all health needs of Timothy Short;

h.    Failures to implement an appropriate plan of care that safeguarded Timothy Short's health and life;

i. Failures to evaluate the care or lack of care provided to Timothy Short in order to make appropriate changes;

j. Failures to review Timothy Short's private medical records or consult with his physician concerning his particularized medical needs;

k. Delays or non-responses to noted urgent conditions; and

l. Failures to administer medications at all or in a timely manner.

120. These systematic deficiencies are the product of official policies, procedures, customs, practices, and actions that were promulgated or tacitly authorized by the Supervisory Defendants and/or personnel vested with final decision-making authority, and caused or materially contributed to the systemic and unconstitutional deliberate indifference to Mr. Short's serious medical needs and the unnecessary and wanton infliction of pain and suffering he experienced.

121. These systematic deficiencies evince a continuing, widespread, persistent pattern of unconstitutional conduct by the Supervisory Defendants that constitutes deliberate indifference to or tacit authorization of such conduct of these policymaking officials after notice to the officials of that misconduct.

122. Defendants are liable to Ms. Short and the other Class 1 heirs for the injuries sustained to Mr. Short, as well the loses she and her family experienced because of Mr. Short's death pursuant to Mo. Rev. Stat. § 537.080, including an amount fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death.

123.    In addition, the Defendants are liable to Ms. Short and the other Class 1 heirs for such damages as Mr. Short suffered between the time of injury and the time of death and for the recovery of which Mr. Short might have maintained an action had death not ensued.

124.    Defendants' acts and omissions were not only intentionally willful, wanton, reckless, and malicious but they also evince a deliberate indifference to and conscious disregard of the rights of Mr. Short such that they are aggravating circumstances. Therefore, Defendants are liable for punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

125.    Ms. Short is entitled to recover reasonable attorney's fees, costs, and expenses from Defendants as provided by 42 U.S.C. § 1988.

WHEREFORE Ms. Short prays the Court enter judgment against Defendants and such further relief as described herein.

## COUNT II
### PLAINTIFF'S CLAIM FOR WRONGFUL DEATH PURSUANT TO 42 U.S.C. § 1983 UNCONSTITUTIONAL POLICY, CUSTOM, FAILURE TO TRAIN OR SUPERVISE

126.    Ms. Short hereby realleges and incorporates by reference the allegations set forth in the factual recitation above as though the same were restated fully herein.

127.    Defendants St. Charles County, Missouri, Defendant Cox, and Defendant AHS (the "Supervisory Defendants") had direct supervisory and oversight responsibilities over their agents and the policies, customs, procedures, including but not limited to, the medical treatment for persons in their custody.

128. The Supervisory Defendants' policies, procedures, customs, practices, and actions recklessly disregarded substantial risks of serious harm to persons in their custody, including Mr. Short, and inflicted injuries that are actionable under 42 U.S.C. § 1983.

129. The Supervisory Defendants' collective abdication of policymaking and oversight responsibilities and/or inadequate policies, procedures, customs, practices, and actions reached the level of deliberate indifference and resulted in a constitutional injury manifesting itself in the unnecessary and wanton infliction of pain because of their collective and tacit authorization of personnel misconduct.

130. Specifically, the Supervisory Defendants' inadequate policies, procedures, customs, practices, and actions—as well as their inadequate training, supervision, direction, and control that, if effective, would have eliminated those systemic deficiencies—permitted with respect to Mr. Short:

m. Failures to communicate, supervise, provide necessities, implement appropriate policies and procedures and failure to follow existing policies and procedures;

n. Failures to assess Timothy Short's current and continuing medical status while detained;

o. Failures to assess Timothy Short's chronic health conditions and appreciating their risk to his health and life;

p. Failures to provide professional medical judgment and care that would have been ordered by outside treating physicians;

q. Failures to note urgent conditions or conditions that necessitate regular assessment, monitoring, and follow-up;

r.  Failures to evaluate the lack of care provided to Timothy Short in order to make appropriate changes;

s.  Failures to develop and implement a classification system that safeguarded Timothy Short's medical conditions;

t.  Delays or non-responses to noted urgent conditions; and

u.  Failures to administer medications at all or in a timely manner.

131.  These systematic deficiencies are the product of official policies, procedures, customs, practices, and actions that were promulgated or tacitly authorized by the Supervisory Defendants and/or personnel vested with final decision-making authority, and caused or materially contributed to the systemic and unconstitutional deliberate indifference to Mr. Short's serious medical needs and the unnecessary and wanton infliction of pain and suffering he experienced.

132.  These systematic deficiencies evince a continuing, widespread, persistent pattern of unconstitutional conduct by the Supervisory Defendants that constitutes deliberate indifference to or tacit authorization of such conduct of these policymaking officials after notice to the officials of that misconduct.

133.  The Supervisory Defendants' official policies, procedures, customs, practices, and actions, which are the moving force behind Mr. Short's injuries and death, operated to deprive Mr. Short of the right to adequate treatment of his serious medical needs, and, but for the same, he would not have been deprived of his Eighth Amendment right to be free

from cruel and unusual punishment, as applied to the states through the Fourteenth Amendment.

134. The Supervisory Defendants' acts and omissions not only contemplate a conscious disregard of a substantial risk of serious harm to health and safety, but said acts and omissions are also sufficiently harmful to illustrate a deliberate indifference to the serious medical needs of Mr. Short and the other persons in their custody.

135. The Supervisory Defendants are liable to Ms. Short and the other Class 1 heirs for the injuries sustained to Mr. Short, as well the loses she and her family experienced because of Mr. Short's death pursuant to Mo. Rev. Stat. § 537.080, including an amount fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death.

136. In addition, the Supervisory Defendants are liable to Ms. Short and the other Class 1 heirs for such damages as Mr. Short suffered between the time of injury and the time of death and for the recovery of which Mr. Short might have maintained an action had death not ensued.

137. The Supervisory Defendants' acts and omissions were not only intentionally willful, wanton, reckless, and malicious but they also evince a deliberate indifference to and conscious disregard of the rights of Mr. Short such that they are aggravating circumstances in this case. Therefore, Defendants are liable for punitive or exemplary damages in an

amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

138.    Ms. Short is entitled to recover reasonable attorney's fees, costs, and expenses from Defendants as provided by 42 U.S.C. § 1988.

WHEREFORE Ms. Short prays the Court enter judgment against Defendants and such further relief as described herein.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Short demands judgment against Defendants and prays the Court enter judgment against Defendants in an amount that will fairly and justly compensate for compensatory damages and exemplary or punitive damages proven at trial; for reasonable attorney's fees, costs, and expenses incurred herein as provided by 42 U.S.C. § 1988; and for such further legal and equitable relief as the Court deems just and proper in the premises.

## DEMAND FOR JURY TRIAL

Ms. Short hereby demands a jury trial on all issues so triable.

Respectfully submitted,

LEAR WERTS LLP

/s/Todd C. Werts
Bradford B. Lear, No. 53204 (MO)
Todd C. Werts, No. 53288 (MO)
Anthony J. Meyer, No. 71238 (MO)
103 Ripley Street
Columbia, MO 65201
Telephone:  573-875-1991
Facsimile:  573-279-0024
Email:  lear@learwerts.com
Email:  werts@learwerts.com
Email:  meyer@learwerts.com

ATTORNEYS FOR PLAINTIFF